Harry FELICIANO, Appellant,

v.

**BOROUGH OF NORRISTOWN.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 21, 2000.

Decided Aug. 28, 2000.

Aaron Finestone, Philadelphia, for appellant.

Paul C. Vangrossi, Norristown, for appellee.

Before COLINS, Judge, PELLEGRINI, Judge and McCLOSKEY, Senior Judge.

COLINS, Judge.

Harry Feliciano appeals the order of the Court of Common Pleas of Montgomery County affirming the termination of his employment as a Norristown Borough (Borough) police officer pursuant to Article IX, § 4–64(f)(2) and (4) of the Borough Administrative Code and Section 1190(2) and (4) of The Borough Code,[1] which in pertinent part authorizes dismissal of a police officer for "neglect or violation of any official duty" and "inefficiency, neglect, intemperance, immorality, disobedience of orders, or conduct unbecoming an officer."

On July 20, 1998, the Borough terminated officer Feliciano's employment for neglect of official duty and conduct unbecoming an officer under the Borough Code and consistent sections of the Borough Administrative Code in connection with an incident on July 5, 1998 during which he allegedly initiated a domestic dispute with his

---

1. Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46190(2) and (4).

estranged wife, Donna Feliciano, in which he brandished his service revolver; recklessly drove the wrong way on the 800 block of Kohn Street in the Borough, endangering a child; disobeyed a standing administrative order[2] and the order of a superior officer at the scene; and had to be physically removed to the Borough police department. Feliciano appealed to the Borough's Civil Service Commission (Commission).

Testifying for the Borough were Donna Feliciano; Joyce and William Dever, Donna Feliciano's stepmother and husband; Jose Figueroa, a neighbor whose son Feliciano allegedly almost hit on Kohn Street; Brian Hoey, a guest of Donna Feliciano; Police Chief Russell Bono; and Corporal James Gallagher, Feliciano's shift commander on July 5, 1998. Feliciano testified in his own behalf, but did not address the events of July 5, 1998. Feliciano also presented the testimony of his sister, Judy Monastero, and that of several neighbors on Kohn Street who observed parts of the events.

After summarizing the testimony, the Commission found as follows. On July 5, 1998 Feliciano dropped off his children at their home on Kohn Street at approximately 7:00 p.m. He telephoned his wife to say he was "coming down packing"; he also telephoned his wife's stepmother, Joyce Dever, with the same message. Approximately 25 minutes after he had dropped off his children, Feliciano returned to the Kohn Street residence, failing to stop at the stop sign, driving the wrong way up the one-way street, and nearly striking a boy who was playing near the street. He exited his car with his service weapon drawn. He argued with Mr. Figueroa, whose son was almost hit.

He then went to his estranged wife's home, put his gun in his waistband and repeatedly attempted to gain entry. The Commission credited the testimony of Corporal Gallagher, who testified that Feliciano was angry, yelling, and refused to leave. Gallagher testified that he repeatedly ordered Feliciano to go and sit in a police vehicle and that other officers who had responded to Mrs. Feliciano's call attempted to keep Feliciano calm and away from the home while he continued to direct his angry shouts at the home. Feliciano's weapon was found to be loaded, with one bullet in the chamber.

On appeal, the court of common pleas took additional evidence. Over the objections of the Borough's counsel that the witnesses were available and could have been called at the hearing before the Commission, the trial court heard testimony from three other officers who responded to the call on July 5, 1998 and the county detective who investigated the incident. The officers' testimony contradicted testimony that Feliciano was armed during the events of July 5, 1998; not one of the officers was in a position to hear the exchange between Feliciano and Corporal Gallagher. The officers corroborated testimony that Feliciano was extremely agitated and screaming in the direction of the home, and testimony that he argued with Mr. Figueroa.

After considering all of the evidence, the trial court adopted the opinion of the Commission in its entirety and concluded that the evidence of record justified Feliciano's dismissal and rejected Feliciano's attempt to minimize the seriousness of the events by linking them to an ongoing domestic dispute. On appeal to this Court,[3] Feliciano argues that the findings of his miscon-

2. After Feliciano's estranged wife lodged a complaint against him for stalking and harassing her while on duty in his patrol car, the police chief advised Feliciano to stay away from his wife and from the street on which she lived and to cease harassing her or Feliciano would lose his job. (Civil Service Commission opinion, p. 3.)

3. Our review is limited to determining whether rights were violated or whether the trial court committed abuse of discretion of error of law. 2 Pa.C.S. § 754.

duct were not supported by substantial evidence and that the trial court erred when it excluded evidence that his children were being exposed to drugs while in his wife's custody and evidence that police department policy requires that all administrative orders be in writing.

■ In reviewing disciplinary actions against police officers, a civil service commission must determine whether the charges brought against the officer are supported by the evidence, whether the penalty imposed is not otherwise prohibited, and whether the penalty is not arbitrary, discriminatory, or an abuse of discretion. *York Township Board of Commissioners v. Batty,* 694 A.2d 395, 397 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 695, 704 A.2d 1384 (1997). A police officer's off-duty conduct may be the basis for a charge of conduct unbecoming a police officer. *Eppolito v. Bristol Borough,* 19 Pa.Cmwlth. 99, 339 A.2d 653 (1975).

■ In the instant case, the charges brought against Feliciano are amply supported by the evidence. All of the testimony presented by both parties establishes that at minimum Feliciano engaged in disorderly conduct on July 5, 1998 that constitutes conduct unbecoming a police officer, which has been defined to include conduct that adversely affects the morale and efficiency of the police force or tends to destroy public respect for, and confidence in, the police force. *Kazmarek v. New Bethlehem Borough Council,* 84 Pa. Cmwlth. 19, 478 A.2d 514 (1984). It is undisputed that Feliciano drove up a one-way street, was armed with his service weapon for some portion of the events, stood shouting at his estranged wife and at least one neighbor, and tried repeatedly to force his way into the home. The credited testimony, although disputed, supports the findings that Feliciano almost struck a child with his car and refused to get control of himself.

The credited, and uncontradicted, testimony of Corporal Gallagher and Chief Bono supports the charge that Feliciano failed to obey a standing administrative order and the order of a superior at the scene on July 5, 1998. Chief Bono testified that he ordered Feliciano to stay away from his wife and from the 800 block of Kohn Street. Corporal Gallagher testified that Feliciano repeatedly refused his orders to back off and be seated in the patrol car during the events in question.

■ We reject Feliciano's argument that the trial court erred when it excluded evidence that his children were being exposed to drugs while in his wife's custody and evidence that police department policy requires that all administrative orders be in writing. Violation of a specific written direction is not prerequisite to finding of disobedience of orders. *Borough of Edgeworth v. Blosser,* 672 A.2d 854 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 546 Pa. 648, 683 A.2d 885 (1996). Furthermore, as noted by the trial court, evidence of the genesis of Feliciano's ongoing marital dispute, even if admitted, would not minimize or justify the seriousness and character of his conduct. In the interest maintaining a high degree of respect for the police, officers may be held to a higher standard of conduct than other citizens and even other public employees. *Faust v. Police Civil Service Commission of Borough of State College,* 22 Pa.Cmwlth. 123, 347 A.2d 765 (1975).

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 28th day of August 2000, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.